**Robert C. WELCH, Jr., Appellant,**

v.

**COCA–COLA ENTERPRISES, INC., and Troup I.S.D., Appellees.**

**No. 12–99–00204–CV.**

Court of Appeals of Texas, Tyler.

March 31, 2000.

Rehearing Overruled Aug. 16, 2000.

Frank Mason, Longview, for Appellant.

Eric H. Findlay, Tyler, for Appellees.

Panel consisted of RAMEY, Jr., C.J., HADDEN, J., and WORTHEN, J.

RAMEY, Chief Justice.

Robert C. Welch, Jr. appeals two summary judgments granted by the trial court. One judgment is in favor of Troup I.S.D. and its high school principal, Rickey Williams, and the other is in favor of Coca–Cola. On appeal, Welch complains of the following: (1) Troup I.S.D. is not immune from suit under doctrine of sovereign immunity; (2) Troup I.S.D. failed to establish that the statute of frauds bars Welch's breach of contract claim; (3) Troup I.S.D. failed to defeat Welch's claims of fraud, estoppel, ratification, acquiescence and part performance; (4) Troup I.S.D. failed to offer summary judgment evidence defeating Welch's unjust enrichment claim; (5) Williams failed to establish summary judgment as a matter of law; and (6) Coca–Cola failed to establish summary judgment as a matter of law. We will affirm in part and reverse and remand in part.

### BACKGROUND

Welch, who had for six years been providing vending machine services to the high school, junior high and elementary school campuses in Troup, was told that the school district would be accepting bids for future vending services. After Welch submitted a bid, Williams, the high school principal, informed Welch that he had been awarded an exclusive five-year vending machine contract. The contract, entitled "Beverage Vending Agreement," was signed by Williams, in the capacity of high school principal. Although the written contract only purported to apply to the high school, Welch also provided machines and services to the junior high and elementary schools on the same bases. Approximately one and a half years into the contract period, Williams informed Welch that Coca–Cola had outbid him and that the school district had decided to accept Coca–Cola's bid. On March 2, 1998, Welch was ordered to remove his machines immediately, and the instant suit followed.

Welch, who initially filed suit against Troup I.S.D., thereafter joined Williams and Coca–Cola as co-defendants. After approximately six months, Troup I.S.D. and Williams filed motions for summary judgment, which the court granted. Coca–Cola then filed its own summary judgment motion, which the trial court also granted.

### TYPES OF SUMMARY JUDGMENT

Before we discuss the standards of review for summary judgments, we note Welch's argument that none of the three motions was based upon Rule 166a(i). The Appellees, on the other hand, assert that they were, in fact, no evidence motions. After viewing the documents, it is clear that Coca–Cola's motion was based upon Rule 166a(i) since it was entitled "Amend-

ed No–Evidence Motion For Summary Judgment." Williams joined in Troup I.S.D.'s motion without stating what type of summary judgment he was asserting. Consequently, he will be bound by the school district's motion. Troup I.S.D.'s document is a combination of a 166a(c) and 166a(i) motion. When the school district addressed the sovereign immunity grounds for judgment, it did not state that it was a 166a(i) motion, nor did it mention "no evidence" in any context. When it addressed the statute of frauds issue, however, it did allege "no evidence" and Rule 166a(i) in several instances.

■ Rule 166a(i) does not prescribe a particular form, style or outline for a no evidence motion and does not require that a motion state that it is brought under (i). Nevertheless, we agree that it would be good practice to specifically state, in the caption or elsewhere, that it is brought under (i), if that is intended. But where, as here, the words "no evidence" and "TEX.R. CIV. P. 166a(i)" appear four times apiece in the statute of frauds argument, the motion is not defective for failing to expressly recite in the caption or elsewhere, that it is brought pursuant to (i). Therefore, for purposes of analysis, Coca–Cola's motion and Troup I.S.D.'s and Williams' motions on the issue of statute of frauds are no evidence motions. But we will review the movants' other grounds for summary judgment pursuant to the 166a(c) standard.

*SUMMARY JUDGMENT STANDARD OF REVIEW*

*RULE 166a(c)*

In reviewing a 166a(c) summary judgment, this Court must apply the standards established in *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985), which are:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

For a party to prevail on a motion for summary judgment, he must conclusively establish the absence of any genuine question of material fact and that he is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c). A movant must either negate at least one essential element of the non-movant's cause of action, or prove all essential elements of an affirmative defense. *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.1995); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex.1986). Since the burden of proof is on the movant, and all doubts about the existence of a genuine issue of a material fact are resolved against the movant, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965). We are not required to ascertain the credibility of affiants or to determine the weight of evidence in the affidavits, depositions, exhibits and other summary judgment proof. The only question is whether or not an issue of material fact is presented. *Gulbenkian v. Penn*, 151 Tex. 412, 252 S.W.2d 929 (1952).

Once the movant has established a right to summary judgment, the non-movant has the burden to respond to the motion for summary judgment and present to the trial court any issues that would preclude summary judgment. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex.1979). All theories in support of or in opposition to a motion for summary judgment must be presented in writing to the trial court. *Casso v. Brand*, 776 S.W.2d 551, 553 (Tex.1989). When a summary judgment does not specify or

state the grounds relied on, as in the instant case, the summary judgment will be affirmed on appeal if any of the grounds presented in the motion are meritorious. *See Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 173 (Tex.1995).

## SUMMARY JUDGMENT STANDARD OF REVIEW

### RULE 166a(i)

■ A no evidence summary judgment is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard in reviewing a no evidence summary judgment as we apply in reviewing a directed verdict. Judge David Hittner and Lynne Liberto, *No–Evidence Summary Judgments Under the New Rule,* in STATE BAR OF TEXAS PROF. DEV. PROGRAM, 20 ADVANCED CIVIL TRIAL COURSE D, D–5 (1997). We review the evidence in the light most favorable to the respondent against whom the no evidence summary judgment was rendered, disregarding all contrary evidence and inferences. *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997). A no evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. TEX.R. CIV. P. 166a(i); *No–Evidence Summary Judgments Under the New Rule.* Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharmaceuticals, Inc.*, 953 S.W.2d at 711.

A litigant may base a motion for summary judgment on the assertion that there is no evidence of one or more essential elements of the opposing party's claim or defense. The movant need not present any summary judgment evidence to support the ground. The specification of each element challenged and the good faith as-sertion that there is no evidence to support that specified element is all that is required to put the burden on the opposing party to produce summary judgment evidence raising a genuine issue of material fact relevant to the challenged element. TEX.R. CIV. P. 166a(i).

■ In the case of a no evidence summary judgment, there can be a judgment by default because, if the non-movant does not respond, judgment can be rendered against the non-movant, summarily disposing of the challenged cause of action or defense. *Saenz v. Southern Union Gas Co.*, 999 S.W.2d 490, 494 (Tex.App.—El Paso 1999, writ denied).

## GROUNDS FOR SUMMARY JUDGMENT

In the instant case, the trial court did not specify upon what grounds it granted judgment for the Appellees. Consequently, we must address and evaluate every theory set forth in the motions to determine if summary judgment was proper. Troup I.S.D.'s and Williams' theories were that: 1) suit was barred by sovereign immunity; and 2) there was no contract because of failure to comply with the statute of frauds. Coca–Cola's sole theory was that since the court granted the other two defendants' motions, there was no contract, and thus there could be no tortious interference with such contract.

## SOVEREIGN IMMUNITY

### Troup I.S.D.

■ Sovereign immunity embraces two principles: immunity from suit and immunity from liability. *Federal Sign v. Texas Southern University*, 951 S.W.2d 401, 405 (Tex.1997); *Missouri Pac. R.R. Co. v. Brownsville Navigation Dist.*, 453 S.W.2d 812, 813 (Tex.1970). A private citizen must have consent from the legislature or by statute to file suit. *Federal Sign*, 951 S.W.2d at 405. If it fails to do so, it may not maintain a breach of contract suit against the State. *Id.* If consent is given,

however, and it is determined that the State has contracted with a private citizen, it waives immunity from liability for breach of contract. *Id.*

 A statute which provides that a certain state entity can "sue and be sued" meets the legislative permission requirement which waives immunity from suit. *Missouri Pac. R.R.*, 453 S.W.2d at 813 (Tex.1970). The Education Code states the following: "(a) The trustees of an independent school district constitute a body corporate and in the name of the district may ... *sue and be sued* ...." TEX. EDUC.CODE ANN. § 11.151(a) (Vernon 1996) (eff. May 30, 1995). Welch brought suit on June 4, 1998, so section 11.151(a) authorized the filing of his lawsuit.

In regards to the second principle of sovereign immunity, liability is waived if the court finds that a private citizen has contracted with the State. *See Federal Sign,* 951 S.W.2d at 405–06; *State v. Elliott,* 212 S.W. 695, 697–98 (Tex.Civ.App.— Galveston 1919, writ ref'd). As we will discuss hereinafter, Welch raised a fact issue as to the existence of a contract between himself, a private citizen, and Troup I.S.D., thereby raising an issue as to waiver of sovereign immunity for liability of breach of contract.

### Williams

 Williams argues that § 101.106 of the Texas Civil Practice & Remedies Code cloaks him with immunity. However, the Texas Tort Claims Act does not apply to breach of contract cases. Consequently, if Troup I.S.D. is not immune from suit or liability for a breach of contract, neither is Williams in his official capacity.

Since the sovereign immunity issue was addressed under the traditional summary judgment standard, it was the school district's and Williams' burden to conclusively establish the absence of any genuine question of material fact and that they were entitled to judgment as a matter of law. Neither Appellee did so. Based upon the above analysis, and contingent upon our conclusion that Welch raised a fact issue as to the existence of a contract, we sustain Welch's issues one and five as they pertain to the affirmative defense of sovereign immunity.

### STATUTE OF FRAUDS

 The statute of frauds provides that certain promises and agreements are not enforceable unless they are in writing. TEX. BUS. & COM.CODE ANN. § 26.01(a) (Vernon 1987). One such agreement which must be in writing is an agreement that is not to be performed within one year from the date of making the agreement. TEX. BUS. & COM.CODE ANN. § 26.01(b)(6). If a contract explicitly calls for performance over a period longer than one year, the mere theoretical possibility of termination of the contract within one year because of death or another fortuitous event does not take the contract out of the statute of frauds. *Chevalier v. Lane's Inc.,* 147 Tex. 106, 213 S.W.2d 530, 532 (1948). The writings relied on to satisfy the statute of frauds must be complete within themselves in every material detail, and must contain all the essentials of a contract so that the agreement may be ascertained from the writings without resort to parol testimony. *Cohen v. McCutchin,* 565 S.W.2d 230, 232 (Tex.1978). Furthermore, an agreement is enforceable under the statute of frauds only if it is signed by the person to be charged with the obligations of the agreement or if it is signed "by someone lawfully authorized" to sign for the person to be charged. TEX. BUS. & COM.CODE ANN. § 26.01(a)(2).

The Appellees argue that there is no contract because Williams had no authority to sign an agreement which bound the trustees of the school district. They assert that only "the trustees as a body corporate have the exclusive power and duty to govern and oversee the management of the public schools of the district...." TEX. EDUC.CODE ANN. § 11.151(b) (Vernon 1996). And although a principal of a high school has authority

to perform various acts, his authority does not include entering into a contract on behalf of the school district. *See* Tex. Educ.Code Ann. § 11.202.

### Part Performance

Welch counters that in certain cases part performance of a party's obligations may take a contract that is otherwise unenforceable under the statute of frauds outside the application of the statute. Part performance will be sufficient if denial of enforcement would amount to a "virtual fraud" on the party seeking enforcement. This means that the party seeking enforcement acted in reliance on the oral contract, has suffered a substantial detriment for which he or she has no adequate remedy, and the other party would reap an unearned benefit if the statute of frauds were applied. *Central Power & Light Co. v. Del Mar, Etc.*, 594 S.W.2d 782, 793 (Tex.Civ.App.—San Antonio 1980, writ ref'd n.r.e.). In order to remove an oral contract from the statute of frauds, the part performance must be unequivocally referable to the alleged oral agreement and corroborative of the fact that such an agreement was made. In other words, the part performance must itself constitute persuasive evidence of the existence and terms of the oral contract. *See Wiley v. Bertelsen*, 770 S.W.2d 878, 882 (Tex.App.—Texarkana 1989, no writ).

In the instant case, since the statute of frauds defense was addressed in a no evidence motion, it was incumbent upon Welch to offer evidence which would, at a minimum, raise a fact issue as to whether or not the statute of frauds did not bar his contract claim. Based upon the above-cited authority, raising a fact issue as to the defense of part performance defeats a no evidence summary judgment. In his affidavit, Welch testified that because he relied upon Williams' representation of a long-term contract, he paid bonus pay-

ments for the first two years, but was not permitted to have his vending machines on school property for the last portion of the second year. This constituted both a detriment to Welch and an unearned benefit to the school district.[1] Furthermore, Welch alleged that he expended his own funds to purchase machines that he would not have purchased but for the agreement, and which he did not need when the agreement was terminated. Thus, Welch raised a fact issue that the school district benefitted from these machines through the generation and payment to the district of vending machine sales commissions. And Welch offered the written document entitled "Beverage Vending Agreement," which was corroborative of the agreement. We hold that Welch raised a fact issue as to the inapplicability of the statute of frauds to the agreement in question because of part performance.

### Williams as Agent

In addition to part performance, Welch raised a fact issue as to Williams' relationship to the school board and whether or not he was acting as the trustees' agent when he entered into the agreement with Welch. An "agent" is one who is authorized by another to transact business or manage some affair for him. *Neeley v. Intercity Management Corp.*, 732 S.W.2d 644, 646 (Tex.App.—Corpus Christi 1987, no writ); *Jorgensen v. Stuart Place Water Supply Corp.*, 676 S.W.2d 191, 194 (Tex.App.—Corpus Christi 1984, no writ). Actual authority of an agent may arise as a result of conduct by the principal that intentionally or negligently allows the agent to believe he has been given actual authority to represent the principal. *Austin Area Teachers Federal Credit Union v. First City Bank–Northwest*, 825 S.W.2d 795, 799 (Tex.App.—Austin 1992, writ denied). If a party holds out

---

1. Welch was required to remove his equipment and close operations by March 12, 1998, thereby not completing the year for which he had paid in full the $1,500 bonus required by the claimed contract. The school district did not tender to Welch its unearned portion of that year's bonus.

another to be its agent in a certain matter, or has knowingly permitted him to act as such agent, the authority of the agent to act will be presumed in so far as the right of third persons is concerned. *Wink v. Wink*, 169 S.W.2d 721, 723 (Tex.Civ.App.— Galveston 1943, no writ). The agency relationship does not depend upon express appointment or assent by the principal; rather, it may be implied from the conduct of the parties under the circumstances. *Jorgensen*, 676 S.W.2d at 194; *Dallas Heating Co. v. Pardee*, 561 S.W.2d 16, 20 (Tex.Civ.App.—Dallas 1977, writ ref'd n.r.e.). An agency may be implied from acquiescence. *Wink*, 169 S.W.2d at 723. Acquiescence exists when there is conduct from which assent may be reasonably inferred. BLACK' S LAW DICTIONARY, p. 24 (6 th Ed., 1990). The fact of agency may be established by circumstantial evidence, and proof may be made of all the facts and circumstances that shows the relationship of the parties and throws light upon the character of such relations. 3 TEX. JUR.3D *Agency* § 50 (1996).

██ If, in fact, Williams was authorized by the school district to enter into a contract with Welch, the written contract satisfies the statute of frauds, and summary judgment on that basis would be improper. A high school principal is not per se the agent of a school district's trustees. However, we are aware of no authority for Appellees' position that a school principal *cannot* act as an agent if appointed as such. In the instant case, Welch offered as evidence his detailed description of how the agreement came about between Williams and himself. In his affidavit, he stated that for six years prior to the agreement in question, he had oral agreements with the respective high school principals (originally Dewayne Brown and then Williams), as well as the Troup elementary and junior high principals, to provide drink vending for the respective Troup I.S.D. campuses. Before the '96–'97 school year commenced, Williams told Welch that the school district would be taking bids for the campuses' drink vending business, and that he should make a bid. After doing so, Williams thereafter informed Welch that he was awarded the bid. A written "contract" was submitted to Williams who signed it after making some changes.

When the agreement was signed, Welch paid the school the first year's bonus payment of $1500. He then purchased new equipment and renovated older equipment in order to perform the contract. The equipment was placed on the school district's property. Beginning in September of 1996, Welch paid the school district a monthly 25% commission on all vending gross sales for almost two years. He also made a second bonus payment of $1,500 for the 1997–98 school year.

In 1997, Coca–Cola attempted to put their machines in the high school cafeteria. Upon Welch's objection, Williams advised Coca–Cola that Welch had a five-year exclusive vending contract and Coca–Cola could not place their machines in the cafeteria over Welch's objections.

In December of 1997, Williams told Welch that Coca–Cola had offered the school a "great deal," and that the district was going to accept it. In March of 1998, Welch was ordered to remove his vending equipment from the school grounds. In addition to his affidavit, Welch also attached to his response to the summary judgment copies of checks and ledgers showing his commission and bonus payments to Troup high school, junior high and elementary schools.

Although there is no evidence of an express agency relationship between the school district and Williams, the summary judgment evidence at least raises a fact issue as to an implied agency. As stated, acquiescence, as well as other circumstances surrounding a transaction, may be proof of an implied agency. In the instant case, Welch believed that Williams was acting on behalf of the school district when he negotiated the vending services contract, and Williams held himself out to Welch as doing so. Vending machines,

which were not owned by the school district, were located throughout school district property. After the written vending agreement was executed, approximately $20,000 was remitted and deposited into the school district's bank account in less than two years from vending sales from the high school campus alone. The district received further payments from vending sales at the elementary and junior high schools during this two year period. Additionally, all three campuses had, for each of the preceding six years, been regularly depositing checks from Welch into the school district's coffers, representing an income to the Troup I.S.D from this source which sum was undeniably substantial. A fact issue is raised that the school board should have known of a relationship that produced this amount of income to the trustees' school district and which resulted in the presence and visibility of numerous vending machines on various campus sites for almost eight years. This evidence presents a fact issue of constructive notice to the school district that it had an agreement with one or more vending concerns to provide vending services to its campuses. The school district accepted the benefits of the contract, but said nothing and did nothing to suggest that Williams had no authority to make the vending contract with Welch. We hold that this evidence at least raises a fact issue as to Williams' implied authority to enter into an agreement with Welch on behalf of Troup I.S.D. We sustain issue two.

### TORTIOUS INTERFERENCE

■ Coca–Cola filed a motion for summary judgment based upon a 166a(i) no evidence standard. Welch did not respond to the motion in any way. Consequently, the trial court did not err when it granted summary judgment for Coca–Cola on tortious interference with a contract. Therefore, we overrule Welch's issue six in regards to that cause of action.

### CLAIMS NOT ADDRESSED IN MOTION FOR SUMMARY JUDGMENT

■ The trial court granted summary judgment against all of Welch's claims, including fraud, quantum meruit/unjust enrichment, and unfair competition. However, it is reversible error to grant summary judgment on a cause of action not addressed in the motion. *Mafrige v. Ross*, 866 S.W.2d 590, 591 (Tex. 1994); *Guest v. Cochran*, 993 S.W.2d 397, 405 (Tex.App.—Houston [14th Dist.] 1999, no writ); *Eller v. NationsBank of Texas, N.A.*, 975 S.W.2d 803, 806 (Tex.App.—Amarillo 1998, no writ). "It matters not that the court may surmise that the party opposing the motion is unlikely to prevail upon the final merits." *LeBlanc v. Maryland Am. Gen. Ins. Co.*, 601 S.W.2d 750, 752 (Tex.Civ.App.—Beaumont 1980, writ ref'd n.r.e.). Furthermore, an appellate court may not raise grounds for reversing or affirming a summary judgment *sua sponte. San Jacinto River Auth. v. Duke*, 783 S.W.2d 209, 210 (Tex.1990).

### *Troup I.S.D. and Williams*

■ Before any motion for summary judgment was filed, Welch admitted, in his answer to the school district's request for admission, that breach of contract was the only cause of action he could assert against the school district. After Troup I.S.D. and Williams filed their motions, Welch amended his petition to include two new causes of action against the parties, fraud and quantum meruit/unjust enrichment. Welch did not amend his admission. On appeal, Troup I.S.D. argues that Welch was estopped from amending his petition to include the additional causes of action. But Troup I.S.D. did not amend its summary judgment motion to address these additional causes of action and plead estoppel. Consequently, because the school district and Williams failed to address the additional causes of action in Welch's amended petition, the trial court could not properly grant summary judgment as against those claims. *See Cincinnati Life Ins. Co. v.*

*Cates,* 927 S.W.2d 623, 626 (Tex.1996); *Granada BioSciences, Inc. v. Barrett,* 958 S.W.2d 215, 220–221 (Tex.App.—Amarillo 1997, writ denied). We therefore sustain Welch's issues as they pertain to fraud and quantum meruit/unjust enrichment.

### Coca–Cola

In regards to Coca–Cola's motion, when Welch amended his petition, he also included a new cause of action against Coca–Cola: unfair competition under the Texas Anti–Trust Act. Coca–Cola did not address the unfair competition cause of action in its motion for summary judgment. On the same authority as set forth above, we sustain Welch's issues as they pertain to unfair competition.

### CONCLUSION

In conclusion, for the reasons stated above, we sustain all issues as they pertain to Troup I.S.D. and Williams. In regards to Coca–Cola, we sustain Welch's complaint that the trial court erred when it granted summary judgment on the unfair competition claim. However, we overrule his issue on tortious interference. We affirm in part and reverse in part and remand for further proceedings.